United States of America v. Joseph Deleon And we'll hear first from Mr. Sansone. Good morning, Your Honors. Bill Sansone. I'm on behalf of, I represent Mr. Deleon along with Ms. Cavallaro. May it please the Court. Your Honors, the District Court erred in applying a two-level enhancement for physical restraint pursuant to U.S.C. Section 2B, 3.1b, 4b, the robbery guideline. Essentially in this case, there was a 20-second surveillance video of this robbery. This case went to trial. The District Court saw that video. I attached it to my brief. It's part of the record. And the issue before this Court today is if the two-level enhancement applies under the facts of Deleon for a physical restraint based on that 20-second video, the two-level enhancement would apply in every single armed robbery case. And the plus-two enhancement would no longer be a fact-specific enhancement but just automatically applied if the person were armed. Can I just ask you this? I'll confess. I have sympathy for your position as a matter of ordinary meaning, interpretation, physical restraint. But you've got Victor and Jones. What do you do with those? Well, Your Honors, I'm glad you brought that up because that's essentially the government's point. And Judge Scriven, the District Court judge, in sentencing was troubled by applying this two-level enhancement. And she felt constrained by Victor and Jones. I mean, candidly, I feel constrained by Victor and Jones. I don't like it, but I feel constrained by them. Well, in Jones, Your Honor, the facts of Jones were the defendant did just not hold a gun. He actually placed the victims into a safe room. He told them to lie down on the floor, and he closed the door in the safe room. So essentially there was more than just— That's true, but in Victor, it seems pretty close. In Victor, it is closer, Your Honor. And here's the thing about it. Unless there's a way to really distinguish that case and to draw a line that we can explain why we applied it in Jones and why we're not— I'm sorry, yeah, Victor. Why we applied it in Victor and we're not applying it here, then I think we're bound by the prior precedent rule. We don't really have any flexibility on that, and we'd have to go en banc to change that rule, which, candidly, I also think is wrong, but I'm still bound by it. So I guess I'm asking you, is there a way you can think of that can distinguish Victor from this case in a way that draws a clear line and that makes sense? I think I can, Your Honor. In Victor, the defendant came in and he had a gun, and he actually—it was a bank. He actually held the gun and he actually directed the victim to the teller line. So at that point, he's actually moving the victim with the gun, saying, you need to come with me. That ties—it's not a great distinction, but it is a distinction, and here's why. Because physical restraint under the guidelines, 1B1.1L, defines physical restraint, gives some examples of being tied, which is physical, bound, which is physical, locked up, which is physical. In this case, which I'll discuss this— the court, I think, gives clarification in where, there has to be something more than just brandishing the firearm, just holding it. Because as Judge Scriven found in her factual findings, the victim did not feel at liberty to leave. And that's what the Second Circuit in Anglin was wrestling with. If it's just holding the firearm, you get into feelings. And even though this court has said that the guideline does not talk about that a person has to be physically moved, that's true, but being bound, being tied up, is a physical restraint, where the person no longer felt that they were restrained. And you're saying—so I watched the video, you're right, it's short, but I think it's compelling. The distance between your client and the store clerk was less than the width of the table where you're sitting at. The way that the gun was held was directly at the store clerk, and the store clerk essentially is—the layout of the store looks like he really didn't have anywhere else to go. So it might have been that he felt that, but he felt that because of the physical space, he didn't—I mean, I guess I'm trying to understand how we can conclude that the store clerk actually thought he could get away. Well, Your Honor, I think if the United States Sentencing Commission wanted it to be inherent in every armed robbery is having the firearm. So, I mean, I can't speak for anyone else. I agree with you that every single armed robbery now is subject to this, and for me that is a problem. But it doesn't really matter that it's a problem for me because unless the case goes on bonk and the court also agrees that that's a problem. We are stuck with that rule. If we look at, I think that this court's decision which Judge Scriven and the district court did not have the benefit of, and one of the things I'm asking for is not just to find that there wasn't physical, the plus two didn't apply, maybe remand this case to Judge Scriven in light of where, which I think gives some context to Victor and Jones. Really, I mean, I was there and where. I mean, isn't where at most just kind of a shoulder shrug? It just sort of says, you know, it might be a closer case. Well, you're right, and you're right. You're talking about the hypothetical that this court gave and where, because the facts of where are clearly restrained. I think that the defendant grabbed the victim by the throat, and this court found that's clearly physical restraint, and I would agree with this, but the court gave hypothetical, and hypothetical is had the, in my position, Your Honor, is the hypothetical and where is the Leon? It's facts. It's pretty close, but all where says, as far as it gets you, is it would be a closer case. You're correct. It does say. Even in where it says that the physical enhancement, physical restraint enhancement applies, quote, where a defendant creates circumstances allowing his victims no alternative but compliance, unquote. That's going to apply pretty much by definition in every armed robbery case. I mean, if you've got a gun held on the person, what is the alternative to compliance? Well, I think that's . . . Getting shot? I mean, like seriously. Right. Well, I appreciate that, and what I would direct your attention to, if we do a textual reading, you would essentially be removing the physical from the physical restraint. Listen, I am on board for the textual reading, on board, on board, on board, but Victor Jones. But in Victor, the victim was moved to the teller line, and in Jones, the victim was actually restrained by a choke. And in this case, the store clerk had nowhere to go. So that's my question. I mean, it does appear that these cases constrain us, but even if we focus on the facts of this case, where was the store clerk supposed to go? And does that not play a role in terms of options or opportunity when it comes to determining whether someone is actually physically restrained? Well, yes, Your Honor, but I think what it would amount to is this court essentially rewriting the guidelines and saying armed robbery is base level 22. And here's what I want to direct your attention to, and I don't think I brought this up in my briefs. Do you agree that the store clerk had nowhere else to go? I don't know if I do, Your Honor. I do not know the confines of that and the way that Mr. DeLeon was holding the gun. If he had started to walk away, the store clerk was not bound by a rope. He was confined by a very small area behind the cashier device machine. Limited area to go. Only exit appears to be past your client. How is that not physically restrained? Well, I think you move into, with that analysis, what Judge Scriven and the district court found is that the defendant felt restrained. And that's the problem. You're essentially removing the physicality. And see, I'm asking, I agree with you about the felt. I'm talking about physical. Physically, where was the store clerk supposed to go? What were his options? And if he didn't have any, isn't that equivalent to being physically restrained? May I answer your question, Your Honor? Yes, please. Okay. The position that I think in the textual reading is that there has to be more than holding the firearm. As outlined by the definition under 1B1.1, all of the examples were physical, even though they didn't move. They were tied, bound, locked up. There's something more than just holding the firearm. The problem, of course, is that Victor says, for better or worse, the enhancement is not limited to those examples. It also applies when the defendant's conduct ensured that the victim's compliance and effectively prevented him from leaving the location. I agree. And that's what the court said. And that's why Judge Scriven felt bound in applying the plus two. But I think the Second Circuit and the Fifth Circuit, when they're discussing this, said we're now moving away from physicality and we're applying it in every case. The difficulty is that Judge Scriven is bound by Victor. The Second Circuit is not bound by Victor. The Fifth Circuit is not bound by Victor. Sadly, we are bound by Victor by virtue of the prior panel president rule. I agree with . . . I don't think this court is because in Victor, the victim was actually physically moved to the teller line. And in Jones, was physically constrained. And I do believe, by that hypothetical, this court gave some context that Judge Scriven didn't have the benefit of With that context overlaying Victor and Jones, she might have definitely thought there has to be more than just holding a gun. Because this is not . . . Armed robbery is not a 22. It's a 20, and then we look for fact-specific reasons to apply the plus two. If this court finds that if you're merely holding a gun, it applies in every single case, then the base level is 22. And I would yield. All right, thank you, Mr. Sansoni. We'll hear next from the government. Good morning, Your Honor. May it please the Court. Under this Court's precedent, the physical restraint enhancement applies if a robber's threatened use of a gun compels a victim to move or to stay in place and prevents the victim from moving. Isn't a threatened use of a gun always going to compel the victim not to move? I mean . . . There's no reason to think that, Your Honor. You wouldn't think . . . Why not? For instance, in this case, had he pointed the gun when the cash register opened, had he pointed the gun and said, get out of here, and the clerk fled, and he took the money and left, we wouldn't have a physical restraint. I also think you wouldn't have it in cases where just a gun possession case, if he's just having a gun and he doesn't actually use it and point it at the person. Well, and a gun possession case isn't the same thing as a robbery, right? I mean . . . And we're under the robbery guideline here, right? I mean, that's the title of this guideline, robbery, right? Right. I meant . . . If he just had a gun to the robbery, that would be a robbery with the gun. And even if he just had it displayed on his waistband and didn't actually do anything with it, he didn't actually point it at the person and hold it there in the circumstances that he did here, then I don't think the district courts would be finding . . . But why wouldn't the sentencing commission then say, which it actually did at some point, I think, say that brandishing a gun during a robbery equals a two-point enhancement, instead of physical restraint? Well, so physically restraint, and in terms of the interpretation of that term, I think the way that this court's precedent has construed it shows that physically restraint, the guideline says, if a person has been physically restrained, the physically is referring to the person's physical movements. So they're talking about a restriction of the person's freedom of physical movement. And then when you look at the definition of the term that's provided, it says forcible restraint. And I think that's where it all comes together and says it's the restraint on the person's physical movement by the use of force, such as a rope or a chokehold . . . Why wouldn't you just say restraint? I mean . . . If you had just said restraint, wouldn't that accomplish exactly the same thing as our interpretation in Victor and Jones does? No, because it doesn't . . . Just the restraint without the forcible aspect of it means that it can be voluntarily . . . You can be voluntarily restrained, or it's not a threatened use . . . It's not a use of force or threatened use of force. But I mean, even more so . . . It's true, as Judge Rosenbaum says, you could leave the word physical out. You could also insert the opposite of physical, psychologically restrained or something, and this would apply precisely. No, because I think the word physically in there . . . In terms of physically restrained, in the words of the guidelines, physically is referring to the person's physical movements. It is a restraint that is restraining the person's physical body, as opposed to saying something like restraining him in another way, like don't blink, or don't be a hero, or don't scream. There's different ways that you can restrain somebody, and the physically adverb that's used in the guideline is referring to the restriction of the person's physical movements. Well, the only example that I've heard from you with respect to when this enhancement wouldn't apply is when the perpetrator encourages people to leave. Is there another example when this enhancement would not apply? I can think of other examples, too, and it's not just when he encourages leave. It's if he just allows the people to leave, either by circumstance or just indirectly. Well, you say you can think of a lot of examples. Can you provide them specifically? If in this case, had he come into the store, and let's say the clerk was outside, walking in by a back door, and the robber points the gun at him and says, don't move, and the person flees and runs away, that would be an instance of it. No, that's an effort to physically restrain. It's just the person was brave and didn't comply. I'm asking you for a situation outside of the clear one you provided in which this enhancement would not apply. But I don't think it would apply in that situation because the enhancement requires that a person be physically restrained. And so if the person wasn't physically restrained... and didn't comply, then the enhancement doesn't apply. That's your position? That's how the guideline is written. So where does this end? If it's not just about sort of work your way down the spectrum from guns to knives to brass knuckles to harsh words, what if the person just says, I will beat you senseless if you leave? I mean, this ultimately is going to be a factual question for the district courts to decide. And I think that the problem here with the hypothetical that's set out and where, you can provide a set of skeletal facts. And had the district court's finding been based on just a skeletal synopsis of what happened, then we might have a question about whether the preponderance of the evidence would support that kind of finding. But, of course, it's not what we had here. And to your point about where does it end and these concerns about the prevalence of maybe this applying to marginal cases, I have two points to say about that. Because in the 30 years since Jones, this circuit's had thousands of robbery prosecutions. And if this were being applied to all these marginal cases, this court would have seen it by now. But it is, actually. It's being applied to all of them. It's just that they're in unpublished opinions. I mean, we have a ton of these cases where this has been applied and it's been upheld. Well, I think they're all unpublished. They're not precedential. Well, those opinions are all about instances where they're actually targeting the gun and holding it at the person. The marginal case that I was referring to would be some of the examples that address the question about where does this end. See, I think the ordinary meaning of physical restraint refers to the actor. You think it means that the focus is on the other person, the victim. But if that's true, then I don't see how I'm going to beat you senseless or, frankly, just being menacing doesn't likewise capture that case. It's not what I think. It's what this court's precedent has established. Fair, fair. I mean, here's the thing. I've put all my cards on the table. I think he's right with respect to ordinary meaning. I think you're right with respect to the precedent. But if we're talking first principles here, I don't see how your interpretation of this guideline can be right. Well, that's what this court's precedent establishes. That is the interpretation of that principle and of that term. And I also think that this concern about the prevalence of this guideline, I don't think it really... It doesn't mean that this guideline doesn't apply, and it doesn't mean that this court's interpretation of it is wrong. If you consider another guideline, the guideline that covers the offenses of transportation and receipt and possession of child pornography material, that guideline provides a two-level enhancement for any offense that involves the use of a computer. Virtually every single one of those offenses involves the use of a computer. It doesn't mean that this is not right. It doesn't mean that, well, then that means that use of computer enhancement can't apply. So long as it's not... On the other hand, at the time that was... those were created, mails were used, right? So, I mean, there was another scenario envisioned at that point in time. Mm-hmm. Just because, as a factual matter, now most people prefer to use the Internet rather than the mails, doesn't mean it didn't have a different application at the time. This one, it's always been the same application, right? I mean, it's not like there's been an advance in guns that renders it different now than it was at the time that the guideline was promulgated, right? Right, but to put it also in perspective about your starting point, when you're looking at what this enhancement is for, the starting point here is an armed robbery. Like you said, this guideline is for a robbery. And so this enhancement is... when you're talking about the prevalence of this, this enhancement is really just talking about robberies, which... That's true. Robberies don't have... You can certainly commit a robbery without physically restraining somebody. That is true. You would most likely do it in a sort of sneaky way, right? You're going to do it... I mean, you might... The person might not really be aware of what's going on when you're doing the robbery. But even so, the point is that every armed robbery... If every armed robbery qualifies for this enhancement, why wouldn't the guideline just say, if it's an armed robbery, then apply two points? It doesn't say that. It doesn't say that, and I think it... It doesn't say that because I do think that there are... Not every use of the gun necessarily involves physically restraining somebody. I mean, you've asked me to come up with the hypotheticals, and maybe they're scant, but it's true. You can commit an armed... You can bring a gun to a robbery without using it against somebody to prevent them from leaving. And the Sentencing Commission recognizes those are two distinct harms. When you bring a gun to a robbery, it is dangerous. It is bad for multiple reasons, one of which is just dangerous, and it escalates the risk of violence involved in what is already a violent crime. And that is what those fire enhancements that are in subsection B2 are addressing. But it can also be dangerous if you're using it to physically restrain somebody during the robbery. You don't have to do that. So those are distinct harms that the Sentencing Commission is entitled to account for separately and cumulatively. And I want to just kind of clarify the... kind of address, really, what happened here, that this is the district court's finding. The district court's finding here is that the use of the gun did, in fact, compel the clerk to stay in the space that he was standing behind the cash register and impeded him from leaving. And with that finding, that factual finding, Mr. DeLeon has not challenged that factual finding. He's never said that, given the evidence in this case, the court couldn't find that, or that the evidence didn't support that finding. And I think when you have that finding that's unchallenged, it falls squarely within this court's precedent, which is, again, that the threatened use of a gun, if it compels a person to move or stay in place, prevents them from leaving. The enhancement applies. So unless this court has any other questions... Thank you, counsel. Thank you. Mr. Sansoni. You have five minutes. Yes, we... Thank you, Your Honor. May it please the court. Yes, the factual finding by the district court were not challenged, but the factual finding, which Judge Scriven felt troubled applying the plus-two level enhancement were for, is that she found the defendant did not feel at liberty to leave. And that's what the Second Circuit in England got into. If you remove the physical, you get into mental, moral, philosophical, and even theological considerations. And this is what the court said, and I think this is exactly where we are. The Second Circuit said, the restraint must be physical, and while we do not doubt that the City College bank robber's conduct caused the City College teller to feel restraint, they were not subject to physical restraint as we interpret the guideline phrase. And, Your Honor, you also brought up... Couldn't the Guideline Commission have written it this way? If you look at United States Sentencing Guidelines 2D2.3, that's operating or directing the operation of a common carrier under the influence. The guideline reads this way. Base-level offense. Apply the greatest. 26 if death involved. 21 if serious bodily injury resulted. 13 otherwise. The Sentencing Commission under 2B3.1 could have certainly written it this way. Base-level offense. Apply the greatest. 22 if armed. 20 if otherwise. But that's not the way the guidelines read. The guidelines, it's the base-level 20, and then there has to be a factual finding that the person was physically restrained. Can I ask you a quick question about... Because I'll confess that I had instinctively been thinking about physical restraint exclusively from the perspective of the doer. The government says, no, no, no, you're thinking about this all wrong. Physical restraint is about the operation on the victim. Whether that person is confined within physical boundaries. What do you say about that? Well, I think there still needs to be some external fact-finding that the person was physically restrained. Not just what Judge Scriven said was the person felt restrained. Because then you're moving into very, very subjective... But here, I mean, maybe even if we sent it back for a remand, wouldn't... It seems like there's no basis for finding anything other than the person was physically restrained. If we accept that definition. If you accept that definition, but if you... I believe the definition has to be there has to be more than just nearly possessing the gun. Because inherent on that... Let me ask you something, and I'm sorry to interrupt, but your friend on the other side of the aisle here has brought up an interesting hypothetical, which would be, let's say that the person comes in, points the gun and says, get out of here, and then does the robbery. That would not qualify, and so that would still be an armed robbery, but it wouldn't qualify. So isn't there a scenario where not every armed robbery qualifies? Even under the interpretation that we're discussing? Well, I think so, but at the initial point, the person would be restrained until the defendant allowed them to leave. And you would have to... The armed robbery could still apply. Because I could see the government arguing under that factual scenario. It wasn't until the defendant himself allowed the victim to leave that the person was not physically restrained anymore. But that would be an easy line for us to draw, and I don't think that would be covered by Victor, right? I mean, it seems like that would be distinguishable from the Victor situation. So we could actually draw that line. Well, I think it would be distinguishable, but I think at the same time, you could apply the armed robbery enhancement as the government wants you to do in this court, even in that case, because the person, the victim, would have been physically restrained until the defendant saw fit to allow them to leave. And that wouldn't resolve them of having physically restrained the victim until they said, oh, you can go now. First thing he does is he comes in and says, get out of here, at the exact same time he points the gun. Why isn't that a different situation? That is a different situation, and that's a much... That situation... But still, you would be relying upon what the defendant's allowing them to leave. And I do believe, I do understand that that's a much, much closer call than in this case. But the point is, when you look at an overall textual, that there has to be something more, and Judge Scriven felt constrained, than just holding the gun. Because, as she says, if it's just merely... It's inherent upon the armed robbery. And applying it in this case would be applying it into literally almost every single case without any factual inquiry. All right, thank you very much, Mr. Sansoni. I note that you were court appointed, and we very much appreciate your service as well. Thank you for the able representation. All right, our next case...